IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMMY RAUL,<br><br>        Plaintiff,<br><br>v.<br><br><br>M&T BANK CORPORATION, C. ANGELA BONTEMPO, ROBERT T. BRADY, CALVIN G. BUTLER, JR., T. JEFFERSON CUNNINGHAM, III, GARY N. GEISEL, LESLIE V. GODRIDGE, RICHARD S. GOLD, RICHARD A. GROSSI, RENE F. JONES, RICHARD H. LEDGETT, JR., NEWTON P.S. MERRILL, KEVIN J. PEARSON, MELINDA R. RICH, ROBERT E. SADLER, JR., DENIS J. SALAMONE, JOHN R. SCANNELL, DAVID S. SCHARFSTEIN, RUDINA SESERI, and HERBERT L. WASHINGTON,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

    Plaintiff Tammy Raul ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by M&T Bank Corporation ("M&T" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press

releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning M&T and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against M&T and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with People's United Financial, Inc. ("People's United") (the "Proposed Transaction").

2. On February 21, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with People's United. Pursuant to the terms of the Merger Agreement People's United shareholders will receive 0.118 of a share of M&T common stock per share of People's United owned (the "Merger Consideration").

3. On April 1, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against M&T and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to M&T shareholders before the vote on the Proposed Transaction or, in the event the Proposed

Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of M&T shares.

9. Defendant M&T is incorporated under the laws of New York and has its principal executive offices located at One M&T Plaza, 5th Floor, Buffalo, New York 14203. The Company's common stock trades on the New York Stock Exchange under the symbol "MTB."

10. Defendant C. Angela Bontempo ("Bontempo") is and has been a director of M&T at all times during the relevant time period.

11. Defendant Robert T. Brady ("Brady") is and has been a director of M&T at all times during the relevant time period.

12. Defendant Calvin G. Butler, Jr. ("Butler") is and has been a director of M&T at all times during the relevant time period.

13. Defendant T. Jefferson Cunningham, III ("Cunningham") is and has been a director of M&T at all times during the relevant time period.

14. Defendant Gary N. Geisel ("Geisel") is and has been a director of M&T at all times during the relevant time period.

15. Defendant Leslie V. Godridge ("Godridge") is and has been a director of M&T at all times during the relevant time period.

16. Defendant Richard S. Gold ("Gold") is and has been a director of M&T at all times during the relevant time period.

17. Defendant Richard A. Grossi ("Grossi") is and has been a director of M&T at all times during the relevant time period.

18. Defendant Rene F. Jones ("Jones") is and has been the Chief Executive Officer and Chairman of the Board of M&T at all times during the relevant time period.

19. Defendant Richard H. Ledgett, Jr. ("Ledgett") is and has been a director of M&T at all times during the relevant time period.

20. Defendant Newton P.S. Merrill ("Merrill") is and has been a director of M&T at all times during the relevant time period.

21. Defendant Kevin J. Pearson ("Pearson") is and has been a director of M&T at all times during the relevant time period.

22. Defendant Melinda R. Rich ("Rich") is and has been a director of M&T at all times during the relevant time period.

23. Defendant Robert E. Sadler, Jr. ("Sadler") is and has been a director of M&T at all times during the relevant time period.

24. Defendant Denis J. Salamone ("Salamone") is and has been a director of M&T at all times during the relevant time period.

25. Defendant John R. Scannell ("Scannell") is and has been a director of M&T at all times during the relevant time period.

26. Defendant David S. Scharfstein ("Scharfstein") is and has been a director of M&T at all times during the relevant time period.

27. Defendant Rudina Seseri ("Seseri") is and has been a director of M&T at all times during the relevant time period.

28. Defendant Herbert L. Washington ("Washington") is and has been a director of M&T at all times during the relevant time period.

29. Defendants Bontempo, Brady, Butler, Cunningham, Geisel, Godridge, Gold, Grossi, Jones, Ledgett, Merrill, Pearson, Rich, Sadler, Salamone, Scannell, Scharfstein, Seseri, and Washington are collectively referred to herein as the "Individual Defendants."

30. The Individual Defendants, along with Defendant M&T, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

31. M&T is a New York business corporation registered as a financial holding company under the Bank Holding Company Act of 1956, as amended (the "BHC Act"), and as a bank holding company under Article III-A of the New York Banking Law. M&T was incorporated in November 1969. As of December 31, 2020, M&T had consolidated total assets

of $142.6 billion, deposits of $119.8 billion and shareholders' equity of $16.2 billion. M&T had 16,718 full-time and 655 part-time employees as of December 31, 2020.

32. As of December 31, 2020, M&T had two wholly owned bank subsidiaries: M&T Bank and Wilmington Trust, National Association. The banks collectively offer a wide range of retail and commercial banking, trust and wealth management, and investment services to their customers. At December 31, 2020, M&T Bank represented ninety-nine percent (99%) of consolidated assets of M&T, and had 716 domestic banking offices located in New York, Maryland, New Jersey, Pennsylvania, Delaware, Connecticut, Virginia, West Virginia and the District of Columbia, a full-service commercial banking office in Ontario, Canada, and an office in George Town, Cayman Islands. As a commercial bank, M&T Bank offers a broad range of financial services to a diverse base of consumers, businesses, professional clients, governmental entities and financial institutions located in its markets.

## The Company Announces the Proposed Transaction

33. On February 22, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> Buffalo, NY and Bridgeport, CT, February 22, 2021 - M&T Bank Corporation (NYSE: MTB) ("M&T") and People's United Financial, Inc. (NASDAQ: PBCT) ("People's United") announced today that they have entered into a definitive agreement under which M&T will acquire People's United in an all-stock transaction.
>
> The combined company will create a diversified, community-focused banking franchise with approximately $200 billion in assets and a network of more than 1,100 branches and over 2,000 ATMs that spans 12 states from Maine to Virginia and the District of Columbia. The combined franchise will operate across some of the most populated and attractive banking markets in the U.S. As part of the transaction, People's United's current headquarters in Bridgeport, Connecticut will become the New England regional headquarters for M&T, further strengthening the combined company's commitment to Connecticut and the region.

Under the terms of the agreement, People's United shareholders will receive 0.118 of a share of M&T common stock for each People's United share they own. Following completion of the transaction, former People's United shareholders will collectively own approximately 28% of the combined company. The implied total transaction value based on closing prices on February 19, 2021 is approximately $7.6 billion.

"In People's United, we have found a partner with an equally long history of serving and supporting customers, businesses and communities," said René Jones, chairman and chief executive officer of M&T, who will lead the combined company in the same capacity. "Combining our common legacies and our complementary footprints will strengthen our ability to serve our communities and customers, and provide solutions that make a difference in people's lives. I am incredibly excited about this opportunity and look forward to welcoming new customers and team members to our M&T family."

"M&T is a like-minded partner that shares our culture of supporting communities by focusing on building meaningful relationships and providing personalized products, services and local market expertise to customers, while building on our legacy of excellence in service," said Jack Barnes, chairman and chief executive officer of People's United. "The merger extends our reach by providing customers access to a larger banking network and an expanded array of services. I am confident our shared community banking philosophies will provide significant long-term value for our shareholders, employees and loyal customers."

**Key attractions of the proposed transaction**

**Unique strategic position and enhanced platform for growth:** The merger will create the leading community-focused commercial bank in the Northeast and Mid-Atlantic regions, with the scale and share to compete effectively. The two companies have a complementary top-tier deposit share in core markets with a top three share in most of their respective top 10 markets. The footprint of the combined company spans an economically diverse region that accounts for over 20% of the U.S. population and over 25% of U.S. GDP.

**Shared commitment to local communities**: Both companies have been long recognized for their community commitments and longstanding support of civic organizations. Over the past decade, M&T, through The M&T Charitable Foundation, has donated $263.7 million to over 2,800 nonprofit organizations across eight states and the District of Columbia. M&T Bank has been awarded the highest possible Community Reinvestment Act rating on every examination since 1982 from the Federal Reserve Bank of New York.

People's United Community Foundation and People's United Community Foundation of Eastern Massachusetts has granted $40 million to nonprofits aligned with the Foundations' collective mission since its inception in 2007.

Through the foundations, M&T will use $90 million to support charitable activities in the communities currently served by People's United.

**Compelling financial impacts:** M&T expects the transaction to be immediately accretive to its tangible book value per share. It is further expected that the transaction will be 10-12% accretive to M&T's earnings per share in 2023, reflecting estimated annual cost synergies of approximately $330 million.

Upon closing, Jack Barnes, Kirk Walters and three other current members of the board of directors of People's United will join M&T's board of directors.

The merger has been unanimously approved by the boards of directors of each company. The merger is expected to close in the fourth quarter of 2021, subject to the satisfaction of customary closing conditions, including receipt of regulatory approvals and approval by the shareholders of each company.

Lazard acted as financial advisor to M&T in connection with the transaction and Sullivan & Cromwell LLP served as legal advisor. Keefe, Bruyette & Woods, a Stifel Company, served as lead financial advisor to People's United. J.P. Morgan Securities LLC also served as financial advisor, and Simpson Thacher & Bartlett LLP served as legal advisor to People's United.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

34. On April 1, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

35. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding the Financial Opinions

36. The Registration Statement contains the financial analyses and opinion of Keefe, Bruyette & Woods, Inc. ("KBW"), and J.P. Morgan Securities LLC ("J.P. Morgan") concerning the Proposed Transaction, but fails to provide material information concerning such.

37. With respect to KBW's *People's United Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by KBW in the analysis.

38. With respect to KBW's *M&T Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by KBW in the analysis.

39. With respect to KBW's *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by KBW in the analysis.

40. With respect to KBW's *Financial Impact Analysis*, the Registration Statement fails to disclose: (i) the pro forma assumptions used in the analysis; and (ii) the extent to which the Proposed Transaction could be a positive change to M&T's estimated 2022 and 2023 EPS and M&T's estimated tangible book value per share at closing as of September 30, 2021.

41. With respect to KBW's *People's United Dividend Discount Model Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying KBW's application of discount rates ranging from 10.0% to 12.0%; (ii) the projected dividends; (iii) the terminal values of People's United; and (iv) the basis for KBW's application of the multiples range of 11.0x to 13.0x.

42. With respect to KBW's *M&T Dividend Discount Model Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying KBW's application of discount rates ranging from 10.0% to 12.0%; (ii) the projected dividends; (iii) the terminal values of M&T; and (iv) the basis for KBW's application of a multiples range of 11.0x to 13.0x.

43. With respect to KBW's *Pro Forma Dividend Discount Model Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying KBW's application of discount rates ranging from 10.0% to 12.0%; (ii) the projected dividends; (iii) the terminal values for the pro forma combined entity; and (iv) the basis for KBW's application of the multiples range of 11.0x to 13.0x.

44. With respect to J.P. Morgan's *People's United Public Trading Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by J.P. Morgan in the analysis.

45. With respect to J.P. Morgan's *People's United Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the basis for J.P. Morgan's application of the multiple range of 11.0x to 13.0x; and (ii) the basis for the cost of equity range of 10.5% to 11.5%.

46. With respect to J.P. Morgan's *M&T Public Trading Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by J.P. Morgan in the analysis.

47. With respect to J.P. Morgan's *M&T Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the basis for J.P. Morgan's application of the multiple range of 11.0x to 13.0x; and (ii) the basis for the cost of equity range of 10.5% to 11.5%.

48.     With respect to J.P. Morgan's analyst share price targets analyses for both companies, the Registration Statement fails to disclose the specific price targets observed in the analyses, as well as the sources thereof.

49.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

50.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

53. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

54. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

55. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

56. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed

Transaction.

57. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

58. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

59. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

60. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

61. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62. The Individual Defendants acted as controlling persons of M&T within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of M&T, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

65. In addition, as set forth in the Registration Statement sets forth at length and

described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

68. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 19, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*